**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MARIO MINJARES-ALVAREZ,

     Defendant-Appellant.

No. 00-2004

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR. 99-159-LH)**

---

Lissa J. Gardner, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender, and Shari Lynn Allison, Research and Writing Specialist, with her on briefs), Las Cruces, New Mexico.

Sarah Y. Vogel, Assistant United States Attorney (Norman C. Bay, United States Attorney, with her on brief), Las Cruces, New Mexico.

---

Before **EBEL**, **PORFILIO**, and **LUCERO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

Appellant Mario Minjares-Alvarez ("Minjares") challenges his conviction under 8 U.S.C. § 1326 for illegally reentering the United States after being deported to Mexico for an aggravated felony. Minjares argues that we should

vacate his conviction because statements he made to a United States Border Patrol agent, which were introduced by the prosecution at his trial, were coerced. Moreover, Minjares argues that his statements should have been excluded because he was never informed of his right to consult with the Mexican consulate, as provided by the Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77-78, 101, 596 U.N.T.S. 261 (hereinafter "Vienna Convention"). We AFFIRM Minjares's conviction.

## I. BACKGROUND

On December 23, 1998, Dona Ana County, New Mexico sheriff's deputy Guillermo Ruiz ("Deputy Ruiz") stopped Minjares for suspicion of driving while intoxicated. Deputy Ruiz observed a twelve-pack of beer, several empty beer bottles, and a partially consumed beer in the car with Minjares. Deputy Ruiz smelled alcohol in the car and on Minjares. Although Minjares did not have a driver's license, he gave Deputy Ruiz his name and told Deputy Ruiz that he was a Mexican citizen without immigration documents. Deputy Ruiz ran a check for outstanding warrants and learned that an INS arrest warrant had been issued for a person matching Minjares's name and description. Deputy Ruiz then placed Minjares under arrest. Deputy Ruiz decided not to administer a roadside sobriety test, however. This was because Minjares did not appear to be significantly

intoxicated, he was to be arrested in any case, and, given Minjares's condition as a paraplegic, Deputy Ruiz was unsure how to conduct the tests.

The sheriff's department notified the United States Border Patrol ("Border Patrol") that Deputy Ruiz had arrested Minjares. Deputy Ruiz then took Minjares's keys and told him to remain in his own car until Border Patrol agents arrived. Deputy Ruiz cited Minjares for having an open container of alcohol, driving with a suspended license, and for a traffic infraction.

Border Patrol Agent Desi D. DeLeon ("Agent DeLeon") responded to the sheriff department's notification that it had Minjares under arrest. Agent DeLeon arrived on the scene, verified Minjares's identity, and ran a second check for warrants which also came back positive. Agent DeLeon asked Minjares his name, date of birth, citizenship, and whether he had previously been deported. Minjares responded to each question, answering "yes" when asked if he had previously been deported. Agent DeLeon then drove Minjares approximately 30 minutes to a Border Patrol station without further questioning.

At the Border Patrol station, Agent DeLeon read Minjares a form, written in Spanish, that notified him of his rights to counsel and to remain silent. Minjares signed the form and waived his rights in the presence of Agent DeLeon and two other Border Patrol agents. Agent DeLeon did not inform Minjares that the Vienna Convention afforded him a right of access to a Mexican consulate and

a right to consult with a consul.  Agent DeLeon interviewed Minjares, and Minjares signed a sworn statement that he had previously been deported and had last entered the United States on March 31, 1998.  Agent DeLeon testified that Minjares "was attentive, answering willingly without hesitation," that he did not slur his speech or stumble, that he understood what was happening to him, and that he never asked for a lawyer or sought to stop the interrogation.  Minjares was not handcuffed or placed in a cell prior to or during his interrogation, and Agent DeLeon maintained a conversational tone of voice while speaking to Minjares.  Agent DeLeon could not smell alcohol on Minjares and could remember nothing that suggested Minjares was intoxicated during the interrogation.

Minjares moved to suppress the statements he had made to police, asserting two separate theories.  First, Minjares argued that his statements were not voluntary.  Second, Minjares argued that his statements should be suppressed because he was never informed that he had a right to consult with consular officials from Mexico pursuant to the Vienna Convention.  See 21 U.S.T. at 101.  Although Minjares acknowledges he understood his constitutional rights, he testified at his suppression hearing that he would have had a better appreciation of the gravity of his situation had he known of his Vienna Convention rights.  Minjares also submitted a letter from Anibal Gomez-Toledo, the Consul for Protection with the Mexican Consulate in El Paso, Texas, stating that he would

have advised Minjares of his rights under U.S. law and that, generally, he advises Mexican citizens who are arrested in the United States to assert those rights. Minjares thus contends that he was prejudiced because the consul's advice would have influenced him to stand on his constitutional rights rather than make the incriminating statements that he now seeks to suppress.

The district court denied Minjares's motion to suppress his statements, specifically concluding that he was not intoxicated during the interrogation.[1] Further, it made a factual finding that Minjares would not have asserted his consular rights had he known of them, and therefore held that he had not suffered prejudice despite the Government's admitted violation of the Vienna Convention.

Procedural History

After the district court denied Minjares's motion to suppress, he was tried in a three-day jury trial beginning July 15, 1999. A critical issue at trial was whether Minjares had actually left the United States, or whether he was instead merely subject to an order of deportation that was never properly exercised. To rebut Minjares's evidence that he never actually left the United States after he

---

[1]The district court did not expressly address Minjares's more general assertion that the totality of the circumstances – including the time of day, the presence of armed and uniformed officers, and Minjares's own fatigue – rendered his statements involuntary. It is sufficient for the purpose of this analysis, however, to note that Minjares's statements were admitted in spite of these objections.

was ordered deported, the Government submitted Minjares's sworn statement that he had been deported and subsequently reentered the United States, as well as Agent DeLeon's testimony describing the interrogation. The jury convicted Minjares, and he was sentenced to 84 months in prison and ordered to pay a $100 special assessment.

Minjares now appeals that conviction on the ground that the trial judge erred in denying his motion to suppress, and he requests this court to vacate his conviction and order a new trial.

## II. STANDARD OF REVIEW

"On appeal from a motion to suppress, we accept the district court's factual findings unless clearly erroneous, review questions of law de novo, and view the evidence in the light most favorable to the prevailing party." United States v. Maden, 64 F.3d 1505, 1508 (10th Cir. 1995). "The credibility of witnesses and the weight to be given the evidence is the province of the district court." United States v. Patten, 183 F.3d 1190, 1193 (10th Cir. 1999). We review de novo the ultimate issue of whether a statement was voluntary, taking into account the totality of the circumstances surrounding the confession. See United States v. Nguyen, 155 F.3d 1219, 1222 (10th Cir. 1998); United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997).

## III. DISCUSSION

### A. Fifth Amendment Voluntariness

Minjares's first assignment of error is that the district court erred in refusing to suppress statements he made to Agent DeLeon of the Border Patrol. After receiving testimony from Minjares, Agent DeLeon, and Deputy Ruiz, the district court made a factual finding that Minjares was not intoxicated at the time he waived his Fifth Amendment right to silence. Further, the district court found that Minjares "clearly knew" he did not have to talk to the Border Patrol agents without an attorney present. The district court therefore denied Minjares's motion.

Minjares contends that, given the totality of the circumstances, the district court erred in concluding his statements were voluntary. Specifically, Minjares argues that the district court's finding that he was not intoxicated when he waived his rights was clearly erroneous. Moreover, he contends that his statements were coerced because he was arrested late at night after he had been drinking, he was fatigued during and after his arrest, he was not given Miranda warnings for approximately three hours after his arrest, and the interrogations took place in the company of armed, uniformed officers.

The Supreme Court recently held that the advisements first required by Miranda v. Arizona, 384 U.S. 436 (1966), arise out of the constitution, and that a

defendant's post-arrest statements must therefore be excluded unless the defendant was first notified of his <u>Miranda</u> rights.  <u>See</u> <u>Dickerson v. United States</u>, 530 U.S. 428 (2000).  Since Minjares did not receive any advisement of his rights at the scene of his arrest, those statements he made prior to being transported to the Border Patrol Station were inadmissible pursuant to <u>Dickerson</u> and <u>Miranda</u>.  None of these statements, however, were submitted to the jury.  Therefore whatever deprivation of rights Minjares may have suffered at that point did not affect his trial.[2]

The Government did, however, enter into evidence the statements Minjares made during his interrogation at the Border Patrol station.  Minjares concedes that he made these statements after Agent DeLeon had fully advised him of his constitutional rights.  He contends, however, that the circumstances surrounding his waiver of rights was so coercive as to render his statements involuntary despite the advisements.  We have stated:

> In determining whether a particular confession is coerced, we consider the following factors: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the

---

[2]Minjares argued to the district court that his pre-<u>Miranda</u> statement to Agent DeLeon effectively let the "cat out of the bag," and thus his subsequent, post-<u>Miranda</u> statements were fruit of the poisonous tree.  Minjares has not raised this argument on appeal or cited authorities in its favor, and therefore we express no view of its merits in this opinion.  <u>Cf.</u> <u>State Farm Fire & Cas. Co. v. Mhoon</u>, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (failure to raise an issue in the opening brief waives the issue).

length and nature of the questioning; (4) whether the defendant was advised of [his] constitutional rights; and (5) whether the defendant was subjected to physical punishment.

Glover, 104 F.3d at 1579 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). None of these factors supports Minjares's contention that his statements were involuntary.

Nothing in the record demonstrates that the district court clearly erred in concluding that Minjares was not intoxicated when he waived his rights. The officers testified that Minjares was lucid, that he was physically able to move into and out of his wheelchair, and that he showed no signs of intoxication during Agent DeLeon's interrogation. Thus, the district court's finding is amply supported. Moreover, the evidence shows that Minjares was an adult high school graduate with some college education. Agent DeLeon conducted the interrogation in a polite and conversational manner. The interrogation lasted only a few minutes, and there is no allegation that Agent DeLeon ever threatened Minjares or made any promises in exchange for Minjares's statements. Both Deputy Ruiz and Agent DeLeon described Minjares as alert and attentive, and Agent DeLeon testified that Minjares participated willingly throughout the interrogation. Although Minjares testified during his suppression hearing, he said nothing to rebut this evidence. To the contrary, he told the court he was aware of and understood his rights at the time he waived them, and based his decision to do so

on a misunderstanding concerning the severity of available sanctions for reentering the United States following a deportation. See Colorado v. Spring, 479 U.S. 564, 574 (1987) ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege.")

Based on this record, we conclude there was sufficient evidence to support the district court's conclusion that Minjares was not intoxicated during his interrogation, and that his responses were voluntary.

B.     Vienna Convention

Minjares next argues that his statements should be suppressed because they were taken in violation of his rights under the Vienna Convention. Article 36 of the Vienna Convention reads, in relevant part:

> 1.  With a view to facilitating the exercise of consular functions relating to nationals of the sending state . . . .
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.
> . . . .
> 2.  The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the priviso, however, that the said laws

> and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

21 U.S.T at 100-101. Minjares interprets this language to create an individual right of access to consular officials, a right to consult with them, and a right to be notified by police of those entitlements. Further, Minjares argues that he was prejudiced by the officers' failure to inform him of these rights because, had he known of them, he would have consulted with the consul and refused to waive his constitutional rights. Finally, Minjares argues that established principles of criminal law require that the Government be barred from using statements taken in derogation of one's Vienna Convention rights at trial.

It remains an open question whether the Vienna Convention gives rise to any individually enforceable rights. See Breard v. Greene, 523 U.S. 371, 376 (1998) (per curiam) (stating in dicta that the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest"). In recent years several courts of appeals, including the Tenth Circuit, have considered this question and declined to address it directly, concluding that even if the Vienna Convention does create individual rights, suppression is not an appropriate remedy for a violation of those rights. See, e.g., United States v. Chanthadara, 230 F.3d 1237, 1255-56 (10th Cir. 2000); United States v. Li, 206 F.3d 56, 66 (1st Cir. 2000) (en banc); United States v. Page, 232 F.3d 536, 541 (6th Cir. 2000); United States v. Chaparro-Alcantara, 226 F.3d 616, 622 (7th Cir.

2000); <u>United States v. Cordoba-Mosquera</u>, 212 F.3d 1194, 1196 (11th Cir. 2000); <u>United States v. Lombera-Camorlinga</u>, 206 F.3d 882, 885 (9th Cir. 2000) (en banc); <u>cf.</u> <u>United States v. Jimenez-Nava</u>, 243 F.3d 192, 198-99 (5th Cir. 2001) (finding both that the Vienna Convention creates no individual rights and that suppression of evidence would be inappropriate if it did).

Our opinion in <u>Chanthadara</u> held, under a plain-error standard of review, that suppression is not an appropriate remedy for a violation of Article 36 of the Vienna Convention, <u>see</u> 230 F.3d at 1255 (citing <u>Lombera-Camorlinga</u>, 206 F.3d at 886; <u>Li</u>, 206 F.3d at 60), and we now reaffirm that holding in this case under a de novo standard of review. Accordingly, once again we need not decide whether the Vienna Convention creates individually enforceable rights. Several considerations support the outcome that suppression is not an appropriate remedy. First, "[t]he exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not authorized by law, but rather to protect specific, constitutionally protected rights." <u>Page</u>, 232 F.3d at 540 (quotation mark omitted); <u>see also</u> <u>Li</u>, 206 F.3d at 61 ("Historically, [suppression has] been available only in cases implicating the most fundamental of rights. This class has heretofore been limited to those paramount protections secured by the Fourth, Fifth, and Sixth Amendments to the United States Constitution."). Since the Vienna Convention does not create fundamental rights on par with those set forth

- 12 -

in the Bill of Rights, see Jimenez-Nava, 243 F.3d at 199; Page, 232 F.3d at 541; Li, 206 F.3d at 61, we are unwilling to enforce Article 36 with the judicially created remedy of suppression.

Further, "[d]efendants who assert violations of a statute or treaty that does not create fundamental rights are not generally entitled to the suppression of evidence unless that statute or treaty provides for such a remedy." Li, 206 F.3d at 61. As courts reviewing the Vienna Convention have consistently recognized, the treaty does not expressly incorporate a suppression remedy. See id. at 61-62 (citing cases). There is no evidence that the Vienna Convention's drafters intended to remedy violations of Article 36 through the suppression of evidence. See Chapparo-Alcantara, 226 F.3d at 621 ("Indeed, the records of the Convention demonstrate that the delegates did not discuss the issue of whether suppression was an appropriate remedy . . . ." (citing Official Records, United Nations Conference on Consular Relations (Volumes I & II) (1963))). Moreover, "[t]here is no reason to think the drafters of the Vienna Convention had [the] uniquely American [Fifth and Sixth Amendment] rights in mind . . . given the fact that even the United States Supreme Court did not require the Fifth and Sixth Amendment post-arrest warnings until it decided Miranda in 1966, three years after the treaty was drafted." Lombera-Camorlinga, 206 F.3d at 886. Indeed, no other country has interpreted the Vienna Convention to require suppression as a

- 13 -

remedy for a violation of Article 36. See Li, 206 F.3d at 65 (citing submission by United States Department of State that it is "unaware of any country party to any consular convention with the United States that remedies failures of notification through its criminal justice process."); Lombera-Camorlinga, 206 F.3d at 888 ("The state department also points out that no other signatories to the Vienna Convention have permitted suppression under similar circumstances, and that two (Italy and Australia) have specifically rejected it."); Linda Jane Springrose, Note, Strangers in a Strange Land: The Rights of Non-Citizens Under Article 36 of the Vienna Convention on Consular Relations, 14 Geo. Immigr. L.J. 185, 211-12 (1999).[3]

In addition, courts have given weight to the United States Department of State's interpretation of the Vienna Convention arguing against a suppression

---

[3]Following oral arguments in this case, Minjares submitted media accounts of two unpublished cases in which British courts suppressed statements made by foreign nationals in derogation of statutory rights to consult with consular officials that were apparently similar to those contained in Article 36 of the Vienna Convention. For the reasons stated in this opinion, we do not find those accounts persuasive.

In addition, we note that on June 27, 2001, the International Court of Justice held that two German nationals prosecuted for murder in Arizona suffered a deprivation of individual rights created by the Vienna Convention because they were not informed of their right to consular access, and because they were denied a review and reconsideration of their convictions for murder in light of Arizona's procedural bar. See generally Germany v. United States of America, 2001 I.C.J. __, available at http://www.icj-cij.org/icjwww/idocket/igus/igusframe.htm. It does not appear that the International Court of Justice considered the applicability of the exclusionary rule to violations of the Vienna Convention, however.

remedy. See, e.g., Lombera-Camorlinga, 206 at 887-888 (noting the State Department believes suppression is an inappropriate remedy for a violation of the Vienna convention); Page, 232 F.3d at 541 ("In the opinion of the State Department, '[t]he only remedies for failure of consular notification under the [Vienna Convention] are diplomatic, political, or exist between states under international law.'" (quoting Li, 206 F.3d at 63 (alterations in original).)); Kolovrat v. Oregon, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.").

Finally, we find that even if suppression were an appropriate remedy for a violation of the Vienna Convention, it would not be appropriate in this case because Minjares has not demonstrated he was prejudiced by a violation of the treaty. Cf. Chanthadara, 230 F.3d at 1256 ("Even presuming the Vienna Convention creates individually enforceable rights, Mr. Chanthadara has not demonstrated that denial of such rights caused him prejudice."). Like the appellant in Chanthadara, Minjares was raised primarily in the United States. See id. Minjares understood his constitutional rights, and was generally familiar with this country's criminal processes. Moreover, in this case the district court made a factual finding that Minjares's assertion that he would have contacted the

- 15 -

consulate had he been aware of his Vienna Convention rights lacked credibility. We defer to a district court's credibility determinations when reviewing a district court's findings of fact under a clearly erroneous standard, see Patten, 183 F.3d at 1193, and nothing in the remainder of the record leaves us with a conviction that a mistake has been made.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Minjares's motion to suppress his statements to Agent DeLeon.

No. 00-2004, *United States v. Minjares-Alvarez*

**LUCERO**, Circuit Judge, concurring.

I join in the majority's resolution of Minjares-Alvarez's Fifth Amendment claim and write separately to concur in the majority's resolution of defendant's Vienna Convention claim.

Like the majority, I would have resolved Minjares-Alvarez's Vienna Convention claim based upon the holding in United States v. Chanthadara that "[e]ven presuming the Vienna Convention creates individually enforceable rights," defendant Minjares-Alvarez, like Chanthadara, "has not demonstrated that denial of such rights caused him prejudice." 230 F.3d 1237, 1256 (10th Cir. 2000). As the majority notes, "the district court made a factual finding that Minjares's assertion that he would have contacted the consulate had he been aware of his Vienna Convention rights lacked credibility." Majority Op. at 16. Having decided the case on that basis, I would not reach the remaining issues.

Particularly in matters of international concern, I think it appropriate to reach only those issues necessary for resolution of the dispute before us.