**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

RUMALDO PESHLAKAI,

  Defendant - Appellant.

No. 24-2156
(D.C. No. 1:21-CR-01501-JCH-1)
(D. N.M.)

_____

### ORDER AND JUDGMENT*
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Rumaldo Peshlakai, a member of the Navajo Nation, pled guilty to violating 18 U.S.C. § 922(g)(1)—the federal felon-in-possession statute. Before entering into a plea agreement, Mr. Peshlakai had filed a motion to suppress. He argued his federal arrest on the charged offense was unlawful because the FBI failed to follow the procedures in the Navajo Nation's federal detainer statute, Navajo Nation Code Ann. tit. 17, §§ 1962–66 (2017) (the Detainer Statute). The district court rejected that argument and denied the motion,

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

concluding the Detainer Statute did not apply in Mr. Peshlakai's circumstances. Mr. Peshlakai now appeals the district court's order denying his motion to suppress. But he never explains in his opening brief why suppression is available even assuming the Detainer Statute was violated, and he never responds to the government's contrary argument that suppression is not an appropriate remedy. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

### A[1]

The events relevant to this appeal occurred within the Navajo Reservation. Mr. Peshlakai and his wife, C.P., are members of the Navajo Nation.

On September 23, 2021, C.P. called dispatch for the Navajo Police Department (NPD). She reported Mr. Peshlakai assaulted her, took their four children, and fled in a truck with a firearm. The NPD contacted the FBI to assist with the investigation. NPD officers then located Mr. Peshlakai's truck

---

[1] We take these background facts from the appellate record, including the district court's order on Mr. Peshlakai's motion to suppress. The parties do not dispute these facts unless otherwise noted. *See United States* v. *Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) ("In reviewing a district court's ruling on a motion to suppress, this court accepts the district court's factual findings unless clearly erroneous . . . .").

in a secluded area, and FBI agents soon joined them. The officers did not find Mr. Peshlakai or his children in the truck.

The officers then set up a "command post" at the NPD's Window Rock station. RI.160. That evening, Mr. Peshlakai called NPD dispatch and spoke to FBI agents. He said the children were safe with his mother, which the NPD and FBI confirmed. He also agreed to turn himself in the next morning.

On the morning of September 24, Mr. Peshlakai reported to the Window Rock station. Three NPD officers met him outside. One of the NPD officers told Mr. Peshlakai he was under arrest and handcuffed him "in a rough manner." RI.161; RIII.62; *see* RIII.63, 65 (Mr. Peshlakai describing the arrest). The officers briefly placed Mr. Peshlakai in an NPD vehicle and then brought him to the NPD booking area, where he took a COVID test. But Mr. Peshlakai was not booked. Instead, the officers brought him to a different part of the station and held him there for thirty to forty-five minutes.

Then FBI agent Curtis Imming arrived. Agent Imming uncuffed Mr. Peshlakai, read him his *Miranda* rights, and questioned him. Mr. Peshlakai shared information about his domestic issues and firearm possession. Because Mr. Peshlakai had a previous conviction for felony assault, Agent Imming arrested him for possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).

**B**

On October 14, 2021, a federal grand jury in the District of New Mexico charged Mr. Peshlakai with violating § 922(g)(1).

On April 29, 2023, Mr. Peshlakai moved to suppress evidence "obtained . . . when FBI Agents . . . conduct[ed] their investigation and arrest." RI.48. The crux of Mr. Peshlakai's argument was that his federal arrest violated the Detainer Statute and, therefore, violated the Fourth Amendment. In support, Mr. Peshlakai first contended "the Navajo Nation has a sovereign right not to release tribal defendants to other sovereigns except in accordance with appropriate procedures." RI.51 (citing, *inter alia*, *Treaty Between the United States of America and the Navajo Tribe of Indians*, 15 Stat. 667 (1868)[2]). And these "appropriate procedures," Mr. Peshlakai argued, are "set forth in the

_____

[2] Mr. Peshlakai was likely referencing this provision of the 1868 Treaty:

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States and at peace therewith, the Navajo tribe agree that they will, on proof made to their agent, and on notice by him, deliver up the wrongdoer to the United States, to be tried and punished according to its laws; and in case they wilfully refuse so to do, the person injured shall be reimbursed for his loss from the annuities or other moneys due or to become due to them under this treaty, or any others that may be made with the United States.

*Treaty Between the United States of America and the Navajo Tribe of Indians*, 15 Stat. 667, 667 (1868); *see United States* v. *Fox*, 573 F.3d 1050, 1054–55 (10th Cir. 2009) (discussing this provision).

[Detainer Statute], 17 N.N.C. §§ 1962-1966." RI.52. But according to Mr. Peshlakai, the FBI "arrested [him] without following the [Detainer Statute] protocols." RI.53. For example, he argued, the FBI "failed to submit a federal detainer request," which the Detainer Statute requires. RI.53; *see* Navajo Nation Code Ann. tit. 17, § 1963.

To show the FBI's failure to follow the Detainer Statute constituted a Fourth Amendment violation, Mr. Peshlakai invoked our decision in *Ross* v. *Neff*, 905 F.2d 1349 (10th Cir. 1990). In *Ross*, an Oklahoma police officer arrested an Indian suspect in Indian Country. *See id.* at 1351–52; *see also* 18 U.S.C. § 1151 (defining "Indian Country"). We held "an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment." *Ross*, 905 F.2d at 1353–54. Relying on the logic of *Ross*, Mr. Peshlakai contended the FBI "acted without jurisdiction" because it violated the detainer procedures rightfully "enacted by the Navajo Nation." RI.55. And Mr. Peshlakai reasoned suppression is generally a proper remedy for Fourth Amendment violations, so it was a proper remedy here. RI.54 (citing, *inter alia*, *Walder* v. *United States*, 347 U.S. 62, 64–65 (1954)).

The government opposed the motion to suppress. The Detainer Statute was "inapplicable to Peshlakai's circumstances," the government argued. RI.61. The government did not dispute that Agent Imming failed to follow the procedures in the statute. But the government contended "no federal detainer

5

was required because Peshlakai was never transferred from Navajo Nation custody to federal custody."[3] RI.60. Further, the government maintained the Detainer Statute is implicated only as to "crimes that can [be] prosecuted concurrently under Navajo Nation law and under . . . federal [law]." RI.60 (quoting Navajo Nation Code Ann. tit. 17, § 1962). Because "Peshlakai was subject to arrest . . . under federal law only," the government argued, "there was no concurrent crime," so the Detainer Statute was inapposite. RI.61.

The government also challenged Mr. Peshlakai's reliance on *Ross* v. *Neff*. "The FBI had jurisdiction to investigate and to arrest Peshlakai," the government insisted, because the FBI "is vested with nationwide jurisdiction to investigate federal crimes." RI.61 (citing 18 U.S.C. § 3052). As the government pointed out, *Ross* held that a *state* officer—not a federal officer—lacked jurisdiction when making an arrest in Indian Country, and *Ross* explicitly recognized that "federal jurisdiction" is broader than state jurisdiction. RI.62–63 (quoting *Ross*, 905 F.2d at 1352–53). The government contended "the defense's heavy reliance on [*Ross*] is wholly misplaced." RI.62.

The district court held an evidentiary hearing. Mr. Peshlakai testified about his arrest at the NPD's Window Rock station and his subsequent

---

[3] Connectedly, the government suggested "Peshlakai was never arrested by the" NPD at all. RI.60. The government concedes on appeal that the NPD arrested Mr. Peshlakai. *See* Ans. Br. at 15 (acknowledging "the uncontested fact that Peshlakai was in Navajo police custody" before the FBI arrest).

questioning and arrest by Agent Imming. No other witnesses testified. The district court also heard argument on Mr. Peshlakai's motion, with the parties reprising the arguments in their briefs.

On June 28, 2023, the district court denied the motion to suppress in a written order. The court began with its understanding of the logical steps in Mr. Peshlakai's argument:

> To reach a Fourth Amendment violation, Mr. Peshlakai advances the following syllogism:
>
> 1. The United States and Navajo Nation's 1868 Treaty guarantees the Navajo a right to establish procedures that the United States must follow before obtaining custody of an Indian.
> 2. Navajo Nation enacted its federal-detainer statute, 7 N.N.C. § 608, 17 N.N.C. §§ 1962-1966, to implement this treaty right.
> 3. FBI agents violated the federal-detainer statute when they arrested Mr. Peshlakai.
> 4. Because the FBI agents violated the federal-detainer statute, the FBI agents violated the 1868 Treaty.
> 5. Because the FBI agents violated the 1868 Treaty, they exceeded their jurisdiction.
> 6. Because the FBI agents exceeded their jurisdiction, they violated the Fourth Amendment.

RI.165–66 (footnotes omitted).

The district court then held Mr. Peshlakai's argument "fails at Step Three." RI.167. It concluded his federal arrest "d[id] not implicate the Navajo Nation's federal-detainer statute." RI.171. According to the district court, the Detainer Statute applies only when a Navajo defendant is "detained by the Navajo Department of Corrections" for "violat[ing] Navajo law." RI.167; *see*

7

RI.169.[4] The court thus concluded the Detainer Statute did not apply in Mr. Peshlakai's case: NPD officers never "booked" him, "no evidence suggests that Mr. Peshlakai became an 'inmate' with the Navajo Department of Corrections," and "NPD officers arrested Mr. Peshlakai to advance a federal investigation" rather than a Navajo investigation. RI.170. The district court therefore denied the motion. It did not address whether suppression would be an appropriate remedy assuming the Detainer Statute was violated.

On July 10, 2023, Mr. Peshlakai moved to dismiss his indictment "on the grounds 18 U.S.C. §[] 922(g)(1) violates Mr. Peshlakai's Second Amendment right to bear arms." RI.182. The district court denied that motion because

---

[4] The district court adopted this view after closely reading the Navajo Nation Code. As the court observed, the code states the Detainer Statute applies to an "Indian . . . *who is detained by the Navajo Department of Corrections.*" RI.167 (quoting Navajo Nation Code Ann. tit. 7, § 608 (2017)). Further, the court recognized, the Detainer Statute repeatedly refers to an "inmate" as being the subject of its procedures. RI.168 (quoting Navajo Nation Code Ann. tit. 17, §§ 1963, 1964). The district court also pointed to the Detainer Statute's policy statement in Navajo Nation Code Ann. tit. 17, § 1962. This statement declares the statute concerns "crimes that can be prosecuted concurrently" under Navajo and federal law—not crimes that are merely federal. RI.167 (quoting Navajo Nation Code Ann. tit. 17, § 1962). The court finally observed that, when discussing state and tribal extradition, the Navajo code states "[n]o Indian . . . shall be removed from the Navajo Nation by state or other tribal nation law enforcement except pursuant to [Navajo] procedures." RI.168–69 (quoting Navajo Nation Code Ann. tit. 17, § 1952). The court reasoned "this categorical language is notably absent from the [Navajo] federal-detainer statute." RI.169.

"Tenth Circuit caselaw foreclose[s] this argument." RI.224; *see* RI.225 (citing *Vincent* v. *Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023)).[5]

Mr. Peshlakai then pled guilty to violating § 922(g)(1) pursuant to a plea agreement. Mr. Peshlakai's plea agreement reserved his right to appeal the district court's orders on his motion to suppress and his motion to dismiss the indictment on Second Amendment grounds. The district court sentenced Mr. Peshlakai to 63 months of imprisonment and three years of supervised release. This timely appeal followed.

## II

### A

"When reviewing the district court's denial of a motion to suppress, we review legal conclusions de novo and findings of fact for clear error." *United States* v. *Smith*, 606 F.3d 1270, 1275 (10th Cir. 2010). "We have discretion to affirm on any ground adequately supported by the record." *Elkins* v. *Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004); *see United States* v. *Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014) (recognizing this discretion in criminal context).

---

[5] Mr. Peshlakai also filed a separate motion to dismiss his indictment "for lack of jurisdiction." RI.30. He argued 18 U.S.C. § 922(g)(1) "is not identified [in the] Major Crimes Act under 18 U.S.C. § 1153, and therefore federal jurisdiction is lacking." RI.33. The district court denied Mr. Peshlakai's motion because "[t]he Tenth Circuit squarely rejected this argument in *United States* v. *Fox*, 573 F.3d 1050, 1055 (10th Cir. 2009)." RI.163. Mr. Peshlakai does not challenge the district court's conclusion on appeal, so we do not consider this issue.

And "[w]hen an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond . . . he waives . . . any objections not obvious to the court to specific points urged by the appellee." *Hasan* v. *AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019) (quoting *Hardy* v. *City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)).

### 1

Mr. Peshlakai focuses his appellate argument on the Detainer Statute itself, contending it applies and was violated. He argues "the district court erred in holding . . . the [Detainer Statute's] protections were not triggered." Op. Br. at 15. Mr. Peshlakai insists the "language" in the Detainer Statute "clearly indicates that the statute is triggered when the Navajo tribal member is in 'Navajo Nation Custody,'" and "there is no dispute that Mr. Peshlakai was physically detained by the Navajo Police at the time he was taken into custody of the federal government." Op. Br. at 24–25 (quoting Navajo Nation Code Ann. tit. 17, § 1963). In response, the government contends the district court correctly interpreted the Detainer Statute. In its view, the statute "was inapplicable to Peshlakai's federal arrest because he was not charged with any Navajo offense and was not being held by the Navajo Department of Corrections when he was arrested by federal law enforcement." Ans. Br. at 9.

The government goes on to raise an argument for affirmance on alternative grounds. It argues "suppression is not warranted even if there was

10

a violation of the Navajo federal detainer statute." Ans. Br. at 18. The government reasons "suppression of evidence [is] only available for [a] statutory violation if the statute provides for such a remedy." Ans. Br. at 20 (citing *United States* v. *Minjares-Alvarez*, 264 F.3d 980, 986 (10th Cir. 2001)). And the government insists Mr. Peshlakai has not otherwise "identified any violation of his Fourth Amendment rights" that might justify suppression. Ans. Br. at 20.

Mr. Peshlakai did not file a reply brief to address this argument for alternative affirmance. Nor can we read Mr. Peshlakai's opening brief to argue suppression is an appropriate remedy. At most, the opening brief summarily asserts Mr. Peshlakai "was subjected to unreasonable seizure by the federal government," his "arrest by the federal government was a jurisdictional overreach and thus was unlawful," and "all statements and evidence obtained as a result of the arrest should be suppressed." Op. Br. at 26. Mr. Peshlakai develops no substantive argument beyond these conclusory statements. We "will not craft a party's arguments for him." *Perry* v. *Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999); *see Burke* v. *Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("[A]n appellant may waive an issue by inadequately briefing it."); *United States* v. *McBride*, 94 F.4th 1036, 1045 (10th Cir. 2024) (concluding "this court is not in the business of filling in the gaps for insufficient arguments" when they "are conclusory, speculative, and without substantial

11

support or citation").[6] To the extent Mr. Peshlakai attempted to argue suppression is a proper remedy at oral argument, that was too late. *See Fed. Ins. Co.* v. *Tri-State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived.").[7]

## 2

Recall, in these circumstances, Mr. Peshlakai has waived any response to the government's alternative argument that is not "obvious." *Hasan*, 935 F.3d at 1099 (quoting *Hardy*, 39 F.3d at 771); *see Seay* v. *Okla. Bd. of Dentistry*, No. 21-6054, 2022 WL 2046511, at *7 (10th Cir. June 7, 2022) (unpublished) (recognizing "[w]e haven't squarely addressed how to consider obviousness in this setting," but reasoning "an error is ordinarily obvious only when it is apparent from precedent or the great weight of authority," and

---

[6] Mr. Peshlakai's brief also states his federal arrest "violated his due process rights." Op. Br. at 25 (heading capitalization omitted). He does not further develop any Due Process theory, and his counsel disclaimed a Due Process theory at oral argument, so we do not address it further. Oral Arg. At 14:50–15:20; *see United States* v. *Amador-Bonilla*, 102 F.4th 1110, 1115 (10th Cir. 2024) (resolving an issue because counsel "conceded [it] at oral argument").

[7] Our conclusion is not changed even if Mr. Peshlakai adequately argued for the suppression remedy in the district court. It is "settled law that insufficient briefing . . . will serve to waive an issue in this court even if it was fairly presented and preserved in the district court." *Eizember* v. *Trammell*, 803 F.3d 1129, 1145 (10th Cir. 2015).

"[t]his approach makes sense here").[8] We see no "obvious" reason the government's argument is incorrect. In other words, it is not "obvious" that suppression is a proper remedy for a violation of the Detainer Statute.

"Historically, suppression has been available only in cases implicating the most fundamental of rights. This class has heretofore been limited to those paramount protections secured by the Fourth, Fifth, and Sixth Amendments to the United States Constitution." *Minjares-Alvarez*, 264 F.3d. at 986 (alteration omitted) (quoting *United States* v. *Li*, 206 F.3d 56, 61 (1st Cir. 2000)). As a consequence, "[d]efendants who assert violations of a statute or treaty that does not create fundamental rights are not generally entitled to the suppression of evidence unless that statute or treaty provides for such a remedy." *Id*. (alteration in original) (quoting *Li*, 206 F.3d at 61). Indeed, where a statute or treaty does not expressly provide for a suppression remedy, we have rejected arguments that suppression is nonetheless available. *Id*. (concluding "suppression is not an appropriate remedy for a violation of Article 36 of the Vienna Convention" because "the treaty does not expressly incorporate a suppression remedy"); *United States* v. *Rosenschein*, 136 F.4th

---

[8] We cite this unpublished case for its persuasive value only. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); Fed. R. App. P. 32.1.

1247, 1256 n.4 (10th Cir. 2025) (rejecting an argument for suppression because "[t]he statute . . . does not" "provide[] for such a remedy").

Applying these principles and absent any argument from Mr. Peshlakai, even if we assume the FBI violated the Detainer Statute, it is not "obvious" that suppression is a proper remedy. *Hasan*, 935 F.3d at 1099 (quoting *Hardy*, 39 F.3d at 771). The Detainer Statute does not appear to provide for suppression expressly. *See Minjares-Alvarez*, 264 F.3d at 986. Nor does it clearly implicate "fundamental rights."[9] *Id.* (quoting *Li*, 206 F.3d at 61).

We thus exercise our discretion to affirm on the alternative basis identified by the government: we cannot conclude, at least in this case, that suppression is a proper remedy for a violation of the Detainer Statute.[10] *See*

---

[9] To be sure, in *Ross* v. *Neff*, we recognized "an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment." 905 F.2d 1349, 1353–54 (10th Cir. 1990). But it is not clear how a violation of the Detainer Statute even relates to *Ross*. *See United States* v. *Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012) (suggesting *Ross* may "travel[] no further than . . . a warrantless arrest *by state police* on federal tribal land" (emphasis added)). For instance, the government argues "FBI agents were acting within the scope of their jurisdiction in arresting Peshlakai for a federal crime," and absent any response from Mr. Peshlakai on appeal, we cannot say the government's argument is obviously incorrect. Ans. Br. at 20 (citing *Fox*, 573 F.3d at 1055); *see Fox*, 573 F.3d at 1055 (concluding § 922(g)(1) applies to Navajo defendants); *Eaton* v. *Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (treating "any non-obvious responses [the appellant] could have made as waived" when he "doesn't respond to" an argument on appeal).

[10] Given our disposition, we need not consider whether the federal government is bound by the Detainer Statute, or whether the Detainer Statute applied to Mr. Peshlakai's federal arrest. *See People for the Ethical Treatment*

*Hasan*, 935 F.3d at 1099 (endorsing an argument for alternative affirmance when the appellants' "briefs on appeal offer no response" and the appellee's argument "is not obviously incorrect"); *Eaton* v. *Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) (concluding that, because the appellant "doesn't respond to" an argument for alternative affirmance, "we treat any non-obvious responses he could have made as waived and assume the [appellee's] . . . analysis is correct"); *Garrett* v. *Wells Fargo Bank N.A.*, No. 24-8013, 2025 WL 902398, at *3 (10th Cir. Mar. 25, 2025) (unpublished) ("Unaided by the [appellants], we are aware of no obvious arguments to defeat [the appellee's] theory. And because this unchallenged . . . theory provides an alternative ground for affirmance, we uphold the district court's [order], without any need to consider the merits of the [appellants' other] argument.");[11] *see also United States* v. *A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) (explaining that, because the appellant "failed to interact" with an argument for affirmance, "we are free to

---

*of Prop. Owners* v. *U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("[I]f it is not necessary to decide more, it is necessary not to decide more." (alteration in original) (quoting *PDK Labs. Inc.* v. *DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring))). And because our decision results from Mr. Peshlakai's waiver on appeal, we do not intend to foreclose any future argument that a violation of the Detainer Statute requires suppression.

[11] We cite this unpublished case for its persuasive value only. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); Fed. R. App. P. 32.1.

conclude [he] waived, at the very least, non-obvious" responses—even though the district court did "not express[ly]" rely on that argument itself).[12]

## B

Mr. Peshlakai also contends "18 U.S.C. {§} 922(g)(1) is unconstitutional as applied to [him]." Op. Br. at 27. Mr. Peshlakai focuses on the fact his

---

[12] In exercising our discretion to affirm on alternative grounds, "we consider whether the ground was fully briefed and argued here and below; whether the parties have had a fair opportunity to develop the factual record; and whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law." *Elkins* v. *Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (citations, quotations, and alterations omitted).

These factors favor exercising our discretion here. Concerning the first factor, in the district court, Mr. Peshlakai argued suppression was a proper remedy on the basis of *Ross* v. *Neff* and other Fourth Amendment cases, RI.54 (citing, *inter alia, Walder* v. *United States*, 347 U.S. 62, 64–65 (1954)), and the government responded by arguing "defense's heavy reliance on *Ross* . . . is wholly misplaced," RI.62. On appeal, the government presented a thorough argument against the suppression remedy, and Mr. Peshlakai had the opportunity to address it. *See* Ans. Br. at 18–20; *Seay* v. *Okla. Bd. of Dentistry*, No. 21-6054, 2022 WL 2046511, at *5 (10th Cir. June 7, 2022) (unpublished) (finding the first factor satisfied when a party "should have" but "didn't" address an issue on appeal). Moving to the second factor, both parties had an opportunity to develop the record on the propriety of the suppression remedy at the suppression hearing and through briefing in the district court. *See, e.g.*, RIII.61–70 (Mr. Peshlakai testifying at that hearing). Turning to the third factor, whether suppression is a proper remedy for a given statutory violation is a legal question. Finally, our alternative path to resolving Mr. Peshlakai's appeal reflects judicial restraint under the circumstances. *See Valley Forge Ins. Co.* v. *Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1094 (10th Cir. 2010) ("Judicial restraint, after all, usually means answering only the questions we must, not those we can."); *see also United States* v. *Adams*, 740 F.3d 40, 43 (1st Cir. 2014) (concluding that, when "suppression [is] not an appropriate remedy" for a given statutory violation, it "makes eminently good sense" to "detour around the statutory construction question").

"predicate offenses are nearly twenty-five (25) years old." Op. Br. at 30. This argument is foreclosed by clear circuit precedent. *See Vincent* v. *Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) (holding § 922(g)(1) is constitutional "for all individuals convicted of felonies").

### III

We **AFFIRM** the district court's orders denying Mr. Peshlakai's motion to suppress evidence and motions to dismiss the indictment.

Entered for the Court

Veronica S. Rossman
Circuit Judge