FILED
United States Court of Appeals
Tenth Circuit

August 31, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAY STUART DE VAUGHN, a/k/a Jay
Paige Edwards,

      Defendant-Appellant.

Nos. 11-1225
      11-1226
      11-1228

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO
(D.C. Nos. 1:10-CR-00254-JLK-1, 1:10-CR-00379-JLK-1, 1:10-CR-00132-JLK-1)**
_____

Kiwi A. D. Camara, Camara & Sibley LLP, Houston, Texas, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney (John F. Walsh, United States
Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **GORSUCH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.
_____

**BALDOCK**, Circuit Judge.
_____

Defendant Jay Stuart De Vaughn mailed twelve hoax anthrax letters to the

President of the United States, seven members of Congress, and two Argentine consulates

in the United States. He pleaded guilty to multiple counts of mailing threatening

communications in violation of 18 U.S.C. §§ 871, 875(c), 876(c), and 1038(a)(1). Defendant now challenges the validity of these charges, arguing his statements did not constitute "threats" and that applying these statutes to him violates the First Amendment. Addressing these arguments requires some straightforward statutory construction and the application of controlling Supreme Court precedent. Yet this case is not as simple as it seems. Defendant pleaded guilty unconditionally without reserving a right to appeal, but the Government has failed to raise the preclusive effect of Defendant's guilty plea. We must therefore determine whether Defendant's guilty plea deprives us of jurisdiction and prevents us from reaching the merits. The Government also seeks to dismiss two of the cases on appeal for lack of territorial jurisdiction. So this apparently simple case requires us to resolve some complex questions before reaching the merits. Ultimately, we conclude we have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Over a four-month period around the end of 2009, Defendant sent anthrax hoax letters to President Barack Obama; Senators Michael Bennet, Jeff Sessions, Richard Shelby, and Mike Udall; Representatives Mike Coffman, Diana DeGette, and Mike Rogers; and the Argentine consulates in Los Angeles and New York. Each letter contained a harmless white powder, yet each stated or implied the powder was anthrax. The letters included statements such as "Have you heard of anthrax??? Get a whiff of this Sambo," "Your government rules are suffocating *us*!!! Take a whiff of *this*!" and "You are going to die like you killed my friends." Record on Appeal (ROA) vol. I at 17–20.

A federal grand jury in Colorado issued an eight-count indictment, charging Defendant with four counts of mailing threatening communications in violation of 18 U.S.C. § 876(c) and four counts of "False Information and Hoax" in violation of 18 U.S.C. § 1038(a)(1).[1]  Two months later, the Government filed an information in the Northern District of Alabama charging Defendant with three counts under § 1038(a)(1), based on the letters received at congressional offices in Birmingham and Anniston, Alabama.  Five days later, the Government filed an information in the Middle District of Alabama charging Defendant with another three counts under § 1038(a)(1), relating to letters sent to congressional offices in Montgomery, Alabama.

Because Defendant agreed to plead guilty to the Alabama charges in the Colorado federal district court, the parties transferred the Alabama cases to the District of Colorado pursuant to Fed. R. Crim. P. 20(a).  Thereafter Defendant waived indictment in the District of Colorado, and the Government filed a seven-count information (which superseded the indictment) charging him with one count of mailing a threat against the President of the United States in violation of 18 U.S.C. § 871, four counts of mailing threatening communications in violation of 18 U.S.C. § 876(c), and two counts of transmitting threatening communications in interstate commerce in violation of 18 U.S.C.

_____

[1] Section 876(c) proscribes mailing a communication "containing any threat . . . to injure the person of the addressee or of another."  Section 1038 proscribes "any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation" of certain enumerated offenses.  18 U.S.C. § 1038(a)(1).

- 3 -

§ 875(c).[2] Defendant entered into a plea agreement that did not reserve a right to appeal. He then pleaded guilty to all thirteen counts—seven counts in the Colorado information and three counts in each Alabama case. The district court sentenced Defendant to 24 months in each case, to be served consecutively, for a total of 72 months' imprisonment. Defendant appealed, raising two arguments regarding his convictions' validity. First, he argues the threatening letters charged in the criminal informations were not, as a matter of law, "threats." Second, he argues both the threat and hoax statutes as applied to him violate the First Amendment.

## II.

Before reaching the merits, we must address three jurisdictional questions. The first is the Government's argument that we have no appellate jurisdiction over the cases filed in the Alabama district courts. The second is whether Defendant's claims on appeal—that the charging documents fail to state an offense and that the criminal statutes are unconstitutional—go to federal subject-matter jurisdiction. If they do, then we must address the arguments despite Defendant's guilty plea because such jurisdictional issues are unwaivable. If these claims are not jurisdictional, however, then Defendant has waived them by pleading guilty. Finally, if we determine Defendant's arguments are *non*-jurisdictional and that he therefore *has* waived them by pleading guilty, we must

---

[2] Section 871(a) makes it a crime to "knowingly and willfully deposit[] for conveyance in the mail . . . any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . ." Section 875(c) criminalizes "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another . . . ."

determine whether the Government can "waive[] the waiver." United States v. Heckenliable, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006). That is, we must determine whether Defendant's *guilty plea itself* deprives us of jurisdiction by rendering the case moot. If his guilty plea moots the case, we must dismiss this appeal. But if his guilty plea merely has a preclusive effect, then the Government has waived the effect of his guilty plea by failing to raise the issue on appeal.

A.

The Government moves to dismiss appeals 11-1225 and 11-1226, the two cases originating in the Northern and Middle Districts of Alabama, for "lack of territorial and subject matter jurisdiction." The Government argues we have no jurisdiction to consider the validity of charges filed outside our circuit, because the Colorado "district court's subject matter jurisdiction was limited under Rule 20." Appellee's Br. at 18. The Government is mistaken on a number of levels.

Our appellate jurisdiction extends to "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. The territorial scope of that jurisdiction is limited to "appeals from reviewable decisions" by district courts within our circuit. 28 U.S.C. § 1294. The only "final decisions" in the cases on appeal are the three criminal judgments entered against Defendant. The United States District Court for the District of Colorado entered these judgments, and our circuit embraces that district. So a straightforward reading of sections 1291 and 1294 suggests we have jurisdiction.

To support its interpretation of § 1294, the Government cites our decision in McGeorge v. Continental Airlines, 871 F.2d 952 (10th Cir. 1989). In McGeorge, the

- 5 -

United States District Court for the District of Columbia issued an order dismissing four of the plaintiff's five claims and then transferred venue to the Western District of Oklahoma. Id. at 953. After a hearing, the Oklahoma district court dismissed the remaining claim. Id. The plaintiff then tried to appeal both orders, suggesting the D.C. district court's order was not final (and thus appealable) until the Oklahoma court entered its order. Id. at 954. We rejected this argument, reasoning that § 1294's territorial limits were not dependent upon the decision's finality, but upon the district court's location. Id. That is, the Tenth Circuit does not have jurisdiction over orders from out-of-circuit district courts, even if those orders do not become final until the case is transferred to an in-circuit district court. Id. But see Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518 (10th Cir. 1991) (recognizing a limited exception for review of whether a transferee district court properly applied the law of the case). McGeorge is inapposite to this case. Unlike McGeorge, where the plaintiff sought review from *orders* entered in another district court, Defendant is challenging *charging documents* filed in other district courts that resulted in criminal judgments within our circuit. Section 1294's territorial limits apply to "reviewable decisions of the district . . . courts," and not to charging documents. 28 U.S.C. § 1294. So McGeorge does not suggest that we lack jurisdiction over Defendant's appeals.

The Government also relies on Rule 20, which it incorrectly argues is a jurisdictional rule. Rule 20 allows a district court to transfer a federal prosecution "to the district where the defendant is arrested, held, or present" if (1) the defendant agrees in writing to plead guilty and waive his right to a trial in the transferor court and (2) the

United States Attorneys in both districts approve. Fed. R. Crim. P. 20(a). Rule 20 is in a section of the federal rules entitled "venue," and we have held that venue rules are not jurisdictional. Hilderbrand v. United States, 304 F.2d 716, 717 (10th Cir. 1962) (per curiam). The Defendant in Hilderbrand argued Rule 20 was unconstitutional in light of the Sixth Amendment's requirement that a trial be held in the state and district where the crime was committed. Id. He argued the constitutional provisions relating to the place of trial were "jurisdictional limitations." Id. We concluded that "the constitutional provisions as to the place of trial relate to venue" and could be waived. Id. The Government's argument that Rule 20 is jurisdictional simply cannot be squared with Hilderbrand. See also Wachovia Bank v. Schmidt, 546 U.S. 303, 316 (2006) ("[V]enue and subject-matter jurisdiction are not concepts of the same order."); Jackson v. United States, 489 F.2d 695, 696 (1st Cir. 1974) (rejecting an argument "that Rule 20 is a jurisdictional rule" and holding "Rule 20 is a venue-waiving provision"). So the Government's challenge to our jurisdiction over appeals 11-1225 and 11-1226 fails.

B.

We now turn to the effect of Defendant's guilty plea on our jurisdiction. The parties have not raised the issue, but "we have an independent duty to examine our own jurisdiction." Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir. 2001). Thus, we raise the issue *sua sponte*.

We have frequently said that "a voluntary and unconditional guilty plea waives all non-jurisdictional defenses." United States v. Salazar, 323 F.3d 852, 856 (10th Cir. 2003); see also United States v. Nooner, 565 F.2d 633, 634 (10th Cir. 1977) ("This Court

- 7 -

has itself on many occasions held that a voluntary plea of guilty is a waiver of all non-jurisdictional defenses."). This statement is technically incorrect because a guilty plea does not waive *all* non-jurisdictional claims. A narrow exception exists for two constitutional claims—due process claims for vindictive prosecution and double jeopardy claims that are evident from the face of the indictment. Blackledge v. Perry, 417 U.S. 21, 30–31 (1974); Menna v. New York, 423 U.S. 61, 62 n.2 (1975) (per curiam), as limited by United States v. Broce, 488 U.S. 563, 575–76 (1989). This caveat will gain more importance below. For now, the salient point is that Defendant pleaded guilty unconditionally, and he does not challenge his plea's voluntariness. So if the arguments Defendant now raises are non-jurisdictional and do not fit the narrow exception for certain constitutional claims, he waived them by pleading guilty. Defendant asserts the first issue he raises on appeal is jurisdictional, although he makes this argument in the context of the standard of review. He argues that whether the charging documents stated an offense "go[es] to whether the offense to which [Defendant] pleaded guilty was an 'offense[] against the laws of the United States.'" Appellant's Br. at 25 (quoting 18 U.S.C. § 3231). That is, a district court has no jurisdiction "if the indictment charges an offense that is not within the terms of the corresponding criminal statute." Id. at 27. Defendant expresses no opinion on whether his as-applied First Amendment challenge is jurisdictional.

## 1.

We look first at whether a charging document's failure to state an offense affects a federal court's jurisdiction. Defendant's position finds some support in older cases from

our circuit. In United States v. Barboa, 777 F.2d 1420, 1421–22 (10th Cir. 1985), the defendant pleaded guilty to conspiracy to commit an explosives offense, but later sought relief under 28 U.S.C. § 2255, alleging the person with whom he "conspired" was actually a government agent. We rejected the Government's argument that "Barboa's guilty plea serves as an admission that he committed the crime of conspiracy." Id. at 1423 n.3. Rather, we said, "If [the defendant] pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him.'" (quoting Blackledge, 417 U.S. at 30). We also cited the Fifth Circuit's decision in United States v. Meacham, 626 F.2d 503, 510 (5th Cir. 1980), where the court said, "The entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense."

We relied on Barboa in United States v. Green, 797 F.2d 855, 856 (10th Cir. 1986), where we said a guilty plea did not preclude a defendant from appealing on the ground that "the indictment fails to state an offense."[3] In Green, the indictment charged the defendant with attempting to escape from a lawful arrest in violation of 18 U.S.C. § 751(a). Id. The defendant argued the indictment failed to state an offense because the

_____

[3] Although most of the cases we discuss dealt with indictments, rather than informations, any distinctions between the two types of charging documents are irrelevant for our purposes. The Federal Rules of Criminal Procedure require both documents to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). And we have held an information, like an indictment, must plead facts "sufficient to inform the defendant of the charges against him to enable him to prepare a defense and to safeguard him from double jeopardy." United States v. Willie, 941 F.2d 1384, 1400 (10th Cir. 1991) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)).

arrest he resisted was unlawful. <u>Id.</u> We concluded the defendant's guilty plea did not bar this argument. <u>Id.</u> Defendant's assertion that his appeal is based on jurisdictional grounds would likely have been correct under our decision in <u>Green</u>.

More recently, however, the Supreme Court addressed the jurisdictional effect of an inadequate indictment in a way that casts serious doubt on <u>Green</u>. At issue in <u>United States v. Cotton</u>, 535 U.S. 625, 628 (2002), was whether, after <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), a district court could sentence defendants for possession of over 50 grams of cocaine under 18 U.S.C. § 841(b)(1)(A) when the indictment only charged a "measurable quantity" under § 841(b)(1)(C). The defendants in <u>Cotton</u> did not challenge the indictment at trial or sentencing, but the Fourth Circuit vacated their sentences under plain error review because "an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional." <u>United States v. Cotton</u>, 261 F.3d 397, 404 (4th Cir. 2001). The Supreme Court reversed. Jurisdiction, the Court said, refers to "the courts' statutory or constitutional *power* to adjudicate the case." <u>Cotton</u>, 535 U.S. at 630 (quoting <u>Steel Co. v. Citizens for Better Env't</u>, 523 U.S. 83, 89 (1998)). The Court rejected the "somewhat expansive notion of jurisdiction" embraced by its earlier cases, such as <u>Ex parte Bain</u>, 121 U.S. 1 (1887). <u>Cotton</u>, 535 U.S. at 629 (internal quotation marks omitted). In <u>Bain</u>, the Court held that when a district court struck certain "superfluous" words from an indictment, the indictment "was no longer the indictment of the grand jury who presented it" and the court had no jurisdiction. <u>Bain</u>, 121 U.S. at 13. The <u>Cotton</u> Court explained that <u>Bain</u> was the "product of an era" in which the Court could "examine constitutional errors in a criminal trial only on a writ of habeas corpus,

and only then if it deemed the error 'jurisdictional.'" Cotton, 535 U.S. at 629, 630. By contrast, "Post-Bain cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case." Id. at 630. The Court summarized those later decisions:

> In Lamar v. United States, 240 U.S. 60 (1916), the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States." Justice Holmes explained that a district court "has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." Similarly, United States v. Williams, 341 U.S. 58, 66 (1951), held that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."

Cotton, 535 U.S. at 630 (alterations in original) (some internal citations omitted). Thus, the Cotton Court concluded, "Insofar as it held that a defective indictment deprives a court of jurisdiction, Bain is overruled." Id. at 631.

The Eleventh Circuit is the only circuit to consider the jurisdictional effect of a defective indictment since Cotton, and, surprisingly, that circuit reached a conclusion similar to Green. United States v. Peter, 310 F.3d 709 (11th Cir. 2002). In Peter, the defendant sought coram nobis relief from his RICO conviction, arguing that a subsequent Supreme Court decision showed "his conduct was never a crime" under the statute. Id. at 711. The Eleventh Circuit said it was bound by the old Fifth Circuit's decision in Meacham and held the defendant's guilty plea did not prevent him from seeking a writ of coram nobis. Id. at 713, 715. The court distinguished Cotton on the ground that Cotton involved only "an omission from the indictment" as opposed to a claim that "the indictment consisted only of specific conduct that, as a matter of law, was outside the sweep of the charging statute." Id. at 714. Thus, the court reasoned, Cotton's overruling

- 11 -

of Bain related only to the *omission* of an element from an indictment.  Id.  Cotton "did not address whether the insufficiency of an indictment assumes a jurisdictional dimension when the only facts it alleges, and on which a subsequent guilty plea is based, describe conduct that is not proscribed by the charging statute."  Id.

We are not persuaded by Peter's overly narrow reading of Cotton.  Although Cotton framed the *question presented* in terms of indictment omissions, the Court did not limit its *holding* to omissions.  Cotton, 535 U.S. at 631.  The Court spoke more broadly of "defective indictment[s]," a term encompassing indictments that fail to charge an offense.  Id.  In fact, omitting an element is often the same thing as "fail[ing] to charge an offense."  Peter, 310 F.3d at 713.  The indictment in Cotton only omitted the drug quantity, an element that went to the sentence authorized under 18 U.S.C. § 841(b)(1)(A).  The indictment still charged another criminal offense, namely, possession of a measurable quantity of cocaine under § 841(b)(1)(C).  But if the indictment had "omitted" an essential element such as intent to distribute, it would have failed to charge *any* offense.  We do not believe Cotton's holding that "defects in an indictment do not deprive a court of its power adjudicate a case," 535 U.S. at 630, hinges on whether the "defect" is the omission of an *essential* element or an *enhancing* element.

More importantly, Peter overlooks the cases Cotton relied on for its holding—Lamar and Williams.  In Lamar, a jury convicted the defendant of falsely pretending to be an officer of the United States government based on his impersonating a member of the House of Representatives.  Lamar, 240 U.S. at 64.  The defendant argued before the Supreme Court that "the court had no jurisdiction because the indictment does not charge

- 12 -

a crime against the United States." Id. His theory, apparently, was that a Congressman was not "an officer of the United States." Id. The Court rejected his argument, noting, "Jurisdiction is a matter of power, and covers wrong as well as right decisions." Id. The Court said a district court, "which has jurisdiction of all crimes cognizable under the authority of the United States," acts within its jurisdiction whether it determines someone is "guilty or innocent under the criminal law." Id. at 65. Thus, "[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." Id.

In Williams, the Government indicted four defendants for offering perjured testimony in an earlier criminal conspiracy trial. Williams, 341 U.S. at 59. The district court dismissed the perjury indictment, reasoning that the court in the *prior* case had lacked jurisdiction because the Fifth Circuit had later held the conspiracy indictment invalid as failing to properly charge an offense. Id. at 61, 65. The district court relied on the perjury statute, which required a "competent tribunal" in order for a statement to constitute perjury. Id. at 65. It reasoned that because the indictment in the prior case "did not state an offense," the court in the prior case had "no jurisdiction." Id. It was therefore not a competent tribunal, and the perjury indictment was invalid. Id. The Supreme Court reversed the district court's jurisdictional holding. Id. at 68. The Court said the district court in the conspiracy case "had jurisdiction of the subject matter, to wit, an *alleged* violation of a conspiracy statute, and, of course, of the persons charged." Id. at 65 (emphasis added). That a higher court ultimately held the indictment defective did "not affect the jurisdiction of the trial court to determine the case presented by the

- 13 -

indictment." Id. The Court concluded, "Though the trial court or an appellate court may conclude that the statute is wholly unconstitutional, or that *the facts stated in the indictment do not constitute a crime* or are not proven, [the court] has proceeded with jurisdiction . . . ." Id. at 68–69 (emphasis added).

The Eleventh Circuit's reading of Cotton cannot square with Lamar and Williams. Nor can we reconcile Lamar and Williams with our holding in Green that a defendant "may challenge the indictment notwithstanding his guilty plea" when he alleges "the indictment fail[ed] to state an offense." Green, 797 F.2d at 856. In light of Lamar and Williams, Green was likely incorrect when we decided it. Cotton's recent reliance on those cases removes all doubt.[4] We read Cotton's holding that indictment defects are not jurisdictional to include both "omission[s] from the indictment," Cotton, 535 U.S. at 629, and arguments that the indictment "does not charge a crime against the United States." Id. at 631 (quoting Lamar, 240 U.S. at 65).

2.

We next consider the jurisdictional import of Defendant's argument that the threat

_____

[4] We cannot, of course, "overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." United States v. Edward J., 224 F.3d 1216, 1220 (10th Cir. 2000) (internal quotation marks omitted). But Cotton is just such a "superseding contrary" case. Although Cotton dealt with indictment omissions, it both quoted and relied on Lamar, saying, "Justice Holmes [in Lamar] explained that a district court 'has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] *[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case.*'" Cotton, 353 U.S. at 630–31 (alterations in original) (quoting Lamar, 240 U.S. at 65). This statement in Cotton is directly contrary to our holding in Green, which failed to so much as cite Lamar or Williams.

and hoax statutes violate the First Amendment as applied to him. On this point, our sister circuits have taken a number of different positions.[5] We have treated an as-applied Second Amendment claim as non-jurisdictional with little discussion. United States v. Fox, 573 F.3d 1050, 1052 n.1 (10th Cir. 2009) (declining to consider the claim because the defendant's voluntary and intelligent guilty plea "waived all other non-jurisdictional challenges to his conviction"). We are convinced that our decision in Fox to treat an as-applied constitutional claim as non-jurisdictional, although not supported by any discussion, was correct. Many of the circuits to reach the opposite conclusion have

---

[5] Some circuits have held that both facial and as-applied constitutional challenges are non-jurisdictional. United States v. Drew, 200 F.3d 871, 876 (D.C. Cir. 2000); United States v. Feliciano, 223 F.3d 102, 125 (2d Cir. 2000). See also United States v. Cardales-Luna, 632 F.3d 731, 737–38 (1st Cir. 2011) (rejecting the dissent's argument that the constitutionality of a criminal statute is jurisdictional). A number of other circuits treat facial constitutional challenges as jurisdictional, but as-applied challenges as non-jurisdictional. United States v. Saac, 632 F.3d 1203, 1208 (11th Cir. 2011); United States v. Phillips, 645 F.3d 859, 862 (7th Cir. 2011); United States v. Morgan, 230 F.3d 1067, 1071 (8th Cir. 2000). The Third Circuit and Sixth Circuits have treated even as-applied constitutional challenges as jurisdictional defenses. United States v. Slone, 411 F.3d 643, 646, 650 (6th Cir. 2005); United States v. Whited, 311 F.3d 259, 262, 264 (3d Cir. 2002). The Ninth Circuit has said a guilty plea "does not bar appeal of claims that the applicable statute is unconstitutional." United States v. Broncheau, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979). But that circuit has limited this class of claims to those involving "prosecutorial vindictiveness amounting to a due process violation" and "a double jeopardy claim." United States v. Montilla, 870 F.2d 549, 552 (9th Cir. 1989) ("We have not extended Blackledge and Menna beyond the specific claims alleged in those cases."). Finally, the Fifth Circuit's position is impossible to pin down. Compare United States v. Burian, 19 F.3d 188, 190 n.2 (5th Cir. 1994) ("Ordinarily, a guilty plea waives all objections, even constitutional ones, unless expressly reserved.") with United States v. Knowles, 29 F.3d 947, 952 (5th Cir. 1994) ("[A] guilty plea does not waive the right of the defendant to challenge the constitutionality of the statute under which he is convicted.") and United States v. Sealed Appellant, 526 F.3d 241, 243 (5th Cir. 2008) (holding that "[t]he doctrine of waiver-by-guilty plea" applied to a defendant's argument that "Congress acted *ultra vires* in enacting" the statute under which he was prosecuted).

relied, rightly or wrongly, on their understanding of Supreme Court precedent. So we step back and consider the Supreme Court's precedent relating to a guilty plea's preclusive effect.

a.

The Court first addressed a guilty plea's effect in three cases decided on the same day, now known as the "Brady trilogy." Blackledge, 417 U.S. at 30. In Brady v. United States, 397 U.S. 742, 746 (1970), the Court rejected a defendant's argument that his guilty plea was involuntary because it was induced by a statute later held unconstitutional. The Court said a guilty plea "is a grave and solemn act" that is "more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial." Id. at 748. Next, in McMann v. Richardson, 397 U.S. 759, 770 (1970), the Court held that a defendant could not collaterally attack his counseled guilty plea on the basis that he misjudged the admissibility of his own confession. Finally, in Parker v. North Carolina, 397 U.S. 790, 799 (1970), the Court held that a defendant who pleaded guilty was procedurally barred from seeking habeas relief because he had failed to preserve his claim in the state-court proceedings.

The court next considered a guilty plea's effect in Tollett v. Henderson, 411 U.S. 258 (1973). There, the Court considered a defendant's habeas corpus claim that Government had unconstitutionally excluded persons from the grand jury that indicted him. Tollett, 411 U.S. at 259–60. The lower courts determined the defendant did not waive this claim because he did not intentionally relinquish a known right. Id. at 260. The Supreme Court said the lower courts might have been right "[i]f the issue were to be

- 16 -

cast solely in terms of 'waiver.'" Id.  But the Court concluded the defendant's guilty plea "forecloses independent inquiry into the claim of discrimination in the selection of the grand jury." Id. at 266.  The Court noted that the Brady trilogy had "refused to address the merits of the claimed constitutional deprivations that occurred prior to the guilty plea." Id. at 265.  The Court said,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

Id. at 267.  The Court reversed and remanded the case.  Id. at 269.

The following year, the Court decided Blackledge v. Perry.  There, the prosecutor substituted a felony charge for a misdemeanor charge after the defendant exercised his right to appeal.  Blackledge, 417 U.S. at 22–23.  The defendant pleaded guilty to the second charge, but then sought habeas relief.  Id. at 23.  Relying on the Due Process Clause, the Court held that "it was not constitutionally permissible for the State to respond to [the defendant's] invocation of his statutory right to appeal by bringing a more serious charge against him . . . ." Id. at 28–29.  The Court said the defendant's guilty plea did not bar relief, distinguishing Tollett and the Brady trilogy on the grounds that none of cases involved "the very power of the State to bring the defendant into court to answer the charge brought against him." Id. at 30.  The Blackledge Court concluded the "very initiation of the proceedings" against the defendant "operated to deny him due process of law." Id. at 31.  Thus, his guilty plea did not foreclose his constitutional claim.  Id.

- 17 -

In Menna, decided the year after Tollett, a defendant raised a double jeopardy claim on appeal after pleading guilty. Menna, 423 U.S. at 61–62. The New York Court of Appeals, relying on Tollett, held that the defendant had "waived" his double jeopardy claim by pleading guilty. Id. The Supreme Court reversed, holding that the guilty plea did not bar the defendant's double jeopardy claim. Id. The Court explained that Tollett and the Brady trilogy did not "stand for the proposition that counseled guilty pleas inevitably 'waive' all antecedent constitutional violations." Id. at 62 n.2. The Court pointed out that "waiver was not the basic ingredient in this line of cases." Id. Rather, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." Id. Thus, a guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." Id. The Court clarified it was not holding that a double jeopardy claim may never be waived, but only that "a plea of guilty . . . does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." Id. The Court remanded for consideration of the double jeopardy claim on the merits. Id. at 63.

More recently, the Court has imposed some limits on Blackledge and Menna. In Broce, 488 U.S. at 565–66, the defendants pleaded guilty to two separate counts of conspiracy. They later moved to vacate their sentences under Fed. R. Crim. P. 35(a), arguing the schemes alleged in their indictments constituted only a single conspiracy and therefore the charges placed them in double jeopardy. Id. at 567. The Supreme Court held their guilty plea barred their claim. Broce, 488 U.S. at 576. The Court said, "A

- 18 -

guilty plea 'is more than a confession which admits that the accused did various acts.' It is an 'admission that he committed the crime charged against him.'" Id. at 570 (internal citations omitted) (quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969) and North Carolina v. Alford, 400 U.S. 25 (1970)). The Court explained that any attempt to reopen the proceedings after a guilty plea is usually confined to whether the plea was "counseled and voluntary." Id. at 569. "If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack." Id. The Court said this general rule applied and "bar[red] the [defendants'] double jeopardy claim." Id. The Court distinguished Blackledge, where "the concessions implicit in the defendant's guilty plea were simply irrelevant, because the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all." Id. at 575. The Court also distinguished Menna on the basis that Menna involved an indictment that was "facially duplicative of the earlier offense of which the defendant had been convicted," whereas Broce involved "indictments that on their face described separate conspiracies." Id. at 575–76. So the Broce Court held that Rule 35 relief was inappropriate. Since Broce, the Supreme Court has not recognized any exceptions to the guilty plea bar beyond those acknowledged in Blackledge and Menna.

b.

One thing is clear from the Supreme Court's guilty plea cases: none speaks in terms of jurisdiction. They only address whether a guilty plea "forecloses" or "bar[s]" a particular claim on appeal. Tollet, 411 U.S. at 266; Menna, 423 U.S. at 62 n.2. They all recognize the general rule that "a voluntary and intelligent plea of guilty made by an

- 19 -

accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984), overruled in part on other grounds by Puckett v. United States, 556 U.S. 129 (2009). Blackledge and Menna merely carved out exceptions for two types of constitutional claims—claims that the Due Process Clause prevents the state from bringing a greater charge and claims that an indictment is "facially duplicative of [an] earlier offense." Broce, 488 U.S. at 575.

If none of the Supreme Court's cases on the issue speak in terms of jurisdiction, where did we get our oft-cited rule that a guilty plea bars all "nonjurisdictional defenses"? This rule has its origin in circuit court precedent pre-dating the Brady trilogy. For example, in Mahler v. United States, 333 F.2d 472, 474 (10th Cir. 1964), we said a guilty plea "is a waiver of all non-jurisdictional defenses."[6] After the Supreme Court's decision in Tollett, we started quoting its statement that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process" in connection with our rule that a guilty plea waives all "nonjurisdictional defenses." See Nooner, 565 F.2d at 634. This, of course, created the impression that the Brady line of cases dealt with the distinction between jurisdictional and non-jurisdictional defenses, when in reality those Supreme Court cases said nothing about jurisdiction.[7] Naturally, because Blackledge and

---

[6] Other circuits used similar wording. See, e.g., Thomas v. United States, 290 F.2d 696, 697 (9th Cir. 1961) ("When a defendant voluntarily and knowingly pleads guilty at his trial this constitutes a waiver of all nonjurisdictional defenses . . . ."); United States v. Ptomey, 366 F.2d 759, 760 (3d Cir. 1966) ("A plea of guilty is a waiver of all nonjurisdictional defects and defenses and constitutes an admission of guilt.").

[7] These different origins also explain our use of the term "waiver," even though the Supreme Court has said the effect of a guilty plea is not "waiver" in the traditional

Menna created exceptions to the general rule of Brady and Tollett, courts could read Blackledge and Menna as addressing jurisdictional defenses. See, e.g., United States v. Morgan, 230 F.3d 1067, 1071 (8th Cir. 2000); United States v. Bishop, 66 F.3d 569, 572 n.1 (3d Cir. 1995). But this conflates two distinct lines of cases. The circuits based their long-standing rule that a guilty plea waives all but "jurisdictional" defenses on the assumption that a defendant waives (that is, voluntarily relinquishes) most defenses by pleading guilty. The rule nevertheless recognizes that a court's subject matter jurisdiction "can never be forfeited or waived." Cotton, 535 U.S. at 630. The Supreme Court's guilty-plea cases, by contrast, have not relied on "waiver" in the usual sense, but have instead focused on the preclusive effect of a defendant "admitting guilt of a substantive crime." Broce, 488 U.S. at 570. And in creating exceptions to this rule of preclusion or "foreclosure," the court has relied on double jeopardy and due process principles, not the long-standing rule that subject-matter jurisdiction is unwaivable.[8]

_____

sense. See Menna v. New York, 423 U.S. 61, 62 n.2 (1975) ("[W]aiver was not the basic ingredient of this line of cases."). That is, the Supreme Court does not require "conscious waiver . . . with respect to each potential defense relinquished by a plea of guilty." United States v. Broce, 488 U.S. 563, 573 (1989). Rather, a guilty plea "foreclose[s] direct inquiry into the merits" of most pre-plea defenses, whether the defendant waived them intentionally or not. Tollet v. Henderson, 411 U.S. 258, 266 (1973).

[8] The Seventh Circuit has recognized these problems in terminology and has gone so far as to create a new meaning for the term "jurisdictional." That court said, "The term 'jurisdictional' [in the guilty plea context] refers to a court's statutory or constitutional authority to hale the defendant into court; it does not refer to subject matter jurisdiction." United States v. Phillips, 645 F.3d 859, 862 (7th Cir. 2011) (citing Blackledge, 417 U.S. at 30). We choose not, like the Seventh Circuit, to pour new meaning into the old wineskins of "jurisdiction." As the Supreme Court has advised, "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the

The "right not to be haled into court" recognized in <u>Blackledge</u> and <u>Menna</u> was a *constitutional* right grounded in the Due Process and Double Jeopardy Clauses. <u>Blackledge</u> and <u>Menna</u> did not address a court's "*power* to adjudicate the case." <u>Steel Co.</u>, 523 U.S. at 89. If that were so, the Supreme Court would have dismissed cases such as <u>Blackledge</u> and <u>Menna</u> for lack of subject matter jurisdiction. Instead, the Court merely affirmed or reversed the judgment below. <u>See</u> <u>Blackledge</u>, 417 U.S. at 32; <u>Menna</u>, 423 U.S. at 62. The circuits' confusing use of the term "jurisdictional defenses" can readily be explained as a result of conflating <u>Blackledge</u> and <u>Menna</u>'s narrow constitutional exceptions to the guilty plea bar with the circuit courts' broad exception for jurisdictional defenses. The most accurate statement of the law would be as follows: A guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court.

c.

This brings us back to where we started: asking whether Defendant's as-applied First Amendment challenge fits one of these exceptions. A claim that a criminal statute is unconstitutional does not implicate a court's subject matter jurisdiction. Subject-matter jurisdiction refers to "the courts' statutory or constitutional *power* to adjudicate the case." <u>Steel Co.</u>, 523 U.S. at 89. Deciding whether or not a statute is constitutional is squarely within the power of the federal courts. <u>See</u> <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137,

_____

persons (personal jurisdiction) falling within a court's adjudicatory authority." <u>Kontrick v. Ryan</u>, 540 U.S. 443, 445 (2004).

- 22 -

178 (1803) (describing the determination of whether a law is constitutional as "the very essence of judicial duty"). Furthermore, as the Supreme Court explained in Williams, a court has jurisdiction over a criminal case even when it or a higher court later determines the statute under which the defendant was prosecuted is unconstitutional. Williams, 341 U.S. at 68–69 ("Though the trial court or an appellate court may conclude *that the statute is wholly unconstitutional*, or that the facts stated in the indictment do not constitute a crime or are not proven, it has proceeded with jurisdiction . . . ." (emphasis added)).

Nor does Defendant's First Amendment claim fit into Blackledge and Menna's exception for claims involving "the very power of the State to bring the defendant into court." Blackledge, 417 U.S. at 30. Neither Blackledge nor Menna involved claims that a criminal statute violated the Constitution. Rather, the defendants in those cases alleged that bringing *any* charges, even charges based on valid statutes, violated due process or double jeopardy. Only a broad reading of Blackledge and Menna, unmoored from their factual and legal bases, would support the conclusion that the right "not to be haled into court" extends to claims that criminal statutes are unconstitutional. Broce made clear that a guilty plea admits more than simply the facts underlying guilt. The Broce Court said, "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." Broce, 488 U.S. at 570. When a defendant admits guilt of a substantive crime, he cannot reverse course on appeal and claim the criminal statute is unconstitutional. Thus, like his claim that the charging documents failed to state an offense, Defendant may forfeit his First Amendment claim by pleading guilty.

3.

Where does this leave us?  Defendant argues the informations to which he pleaded guilty alleged only "conduct that falls outside the corresponding criminal statute."  He also argues the threat and hoax statutes violate the First Amendment as applied to him. As we have explained, both of these arguments go to the merits and implicate neither our subject-matter jurisdiction nor the <u>Blackledge</u> or <u>Menna</u> exceptions.  So we would ordinarily conclude Defendant has waived the arguments he now raises on appeal and affirm his conviction, end of case.  See <u>Salazar</u>, 323 F.3d at 856.

Unfortunately, it is not that simple.  The Government failed to raise the preclusive effect of Defendant's guilty plea in its briefing on appeal.[9]  "It is well-settled that arguments inadequately briefed in the opening brief are waived."  <u>United States v.</u>

---

[9] At oral argument, Government's counsel asserted the Government raised the effect of Defendant's guilty plea in its opening brief when it said "an unconditional plea of guilty waives all nonjurisdictional defects and defenses occurring prior to the entry of the guilty plea."  Appellee's Br. at 21 (citing <u>Tollet</u>, 411 U.S. at 258, 267).  The Government only cited <u>Tollet</u> under the heading "Standard of review."  Appellee's Br. at 21.  This section of the brief is a hodge-podge of disconnected case law supporting the following propositions: (1) a guilty plea bars all nonjurisdictional defenses, (2) we should construe indictments in favor of validity when defendants first challenge them on appeal, (3) we should not consider arguments raised for the first time on appeal, (4) we should review properly preserved issues for plain error, and (5) an appellant waives plain error review by failing to argue it on appeal.  <u>Id.</u> at 21–24.  The Government's first attempt to explain this mess of case law is under the heading "The applicable standard of review is plain error."  <u>Id.</u> at 24.  Obviously, if Defendant's guilty plea barred his appeal, the standard of review *for the merits of his claim* would be irrelevant.  Furthermore, the Government's brief never asserts Defendant waived the arguments he raises on appeal, nor does it ask us to dismiss the appeal based on Defendant's guilty plea.  In light of its complete failure to explain how the <u>Tollett</u> rule applies to this case, we cannot conclude the Government raised the issue.  "The court will not consider issued adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." <u>United States v. Wooten</u>, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted).

- 24 -

Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011) (brackets omitted) (internal quotation marks omitted). Thus, if the effect of a guilty plea is merely preclusive, but not jurisdictional, the Government has waived any reliance on Defendant's guilty plea. If, however, a valid and unconditional guilty plea deprives us of jurisdiction, the Government cannot waive the guilty plea's effect. Cotton, 535 U.S. at 630. So our final jurisdictional task is to determine whether a guilty plea deprives us of subject-matter jurisdiction over an appeal.

## C.

The circuits to consider the jurisdictional effect of a guilty plea have reached different results. The Ninth Circuit holds a guilty plea's effect is non-jurisdictional, and that the Government consequently may waive it. United States v. Jacobo Castillo, 496 F.3d 947 (9th Cir. 2007) (en banc). The Eighth Circuit appears to follow the Ninth on this question. See United States v. Cheney, 571 F.3d 764, 769 (8th Cir. 2009) (citing Jacobo Castillo) ("[T]he government does not contend that [the defendant's] guilty plea bars him from challenging the factual basis for his plea—in effect, waiving any claim to rely on a possible waiver by [the defendant]."). On the other hand, the Seventh Circuit recently held that an unconditional guilty plea deprives an appellate court of jurisdiction. United States v. Combs, 657 F.3d 565 (7th Cir. 2011) (per curiam), cert. denied 132 S. Ct. 2373 (2012).

## 1.

In Jacobo Castillo, the Ninth Circuit faced a case very similar to this one. The defendant pleaded guilty in an unconditional plea, but then appealed his conviction on the

grounds of pre-indictment delay and alleged Fourth Amendment violations. 496 F.3d at 950–51. The Government "[i]nexplicably . . . did not assert [the defendant's] plea agreement as a bar to his appeal." Id. at 951. The Ninth Circuit panel initially held that the defendant's guilty plea deprived the appellate court of jurisdiction. United States v. Castillo, 464 F.3d 988, 988 (9th Cir. 2006). Upon taking the case en banc, the Ninth Circuit held that "a valid guilty plea does not deprive the court of jurisdiction." Jacobo Castillo, 496 F.3d at 949. The court reasoned that it had jurisdiction over "appeals from all final decisions of the district courts of the United States." Id. (quoting 28 U.S.C. § 1291). Thus, "in the absence of some other provision that would deprive us of appellate jurisdiction," the court had authority over the defendant's appeal. Id. The court distinguished Tollet and Menna as "address[ing] the *preclusive effect* to be given the plea agreement, not the *jurisdiction* of the court." Id. at 956. Thus, the defendant's unconditional guilty plea did not deprive the court of jurisdiction.[10]

Judge Callahan dissented alone from the en banc decision. She reasoned that the unconditional guilty plea deprived the appellate court of jurisdiction by mooting the case.

_____

[10] The Ninth Circuit also cited our decision in United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam), to support its holding. Jacobo Castillo, 496 F.3d at 956. Our decision in Hahn, however, addressed only whether an "enforceable *appellate waiver* renders [a] case moot." Hahn, 359 F.3d at 1322 (emphasis added). An appellate waiver contained in a plea agreement is not quite the same thing as an unconditional guilty plea. The former is essentially a court-approved contract that is usually enforceable on appeal. United States v. Novosel, 481 F.3d 1288, 1291–92 (10th Cir. 2007). The latter, however, is an admission the defendant is guilty of a particular crime. United States v. Broce, 488 U.S. 563, 570 (1989). Appeal waivers present questions of enforceability, interpretation, and scope that often present a live controversy. Hahn, 359 F.3d at 1325. Because Hahn dealt with a plea agreement, rather than a guilty plea by itself, it did not decide the question presented here.

Id. at 957 (Callahan, J., dissenting). She said, "Tollett makes clear that a guilty plea 'forecloses independent inquiry' into 'claimed antecedent constitutional violations,' not by virtue of a waiver, but because an unconditional guilty plea breaks the chain of events in a criminal proceeding." Id. at 958 (quoting Tollett, 411 U.S. at 266). Furthermore, Menna "explained that the guilty plea is not a 'waiver,' but removes guilt issues from the case." Id. The defendant's unconditional guilty plea, Judge Callahan argued, "moots any claims of pre-plea constitutional violations that do not affect the voluntary and intelligent nature of the guilty plea." Id.

In Combs, the Seventh Circuit declined to follow Jacobo Castillo. There, the defendant pleaded guilty to unlawful firearm possession after the district court denied his suppression motion. Combs, 657 F.3d at 567–68. He then appealed. Id. at 568. The Government did not raise the preclusive effect of the defendant's unconditional guilty plea. Id. The Seventh Circuit, however, raised the issue *sua sponte* and held that the guilty plea deprived it of jurisdiction over the defendant's appeal. Id. at 571. The court said it was "inclined to agree" with Judge Callahan's dissent in Jacobo Castillo that pre-plea claims do not present the appellate court with a case or controversy. Id. The court also added that Rule 11(a)(2) requires the district court's consent to a conditional plea, and allowing an appeal would "usurp the district court's independent right to accept or reject a conditional plea." Id. at 571. Accordingly, the court dismissed the appeal for lack of jurisdiction. Id.

2.

We agree with the Ninth Circuit that a guilty plea does not deprive us of

jurisdiction by rendering all pre-plea defenses moot. Neither Tollett nor Menna were mootness cases. In Tollett, the Supreme Court said, "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett, 411 U.S. at 267. Yet the Court did not speak in terms of jurisdiction or mootness either or indicate that the case should be dismissed on those grounds. Instead, it said the guilty plea "foreclose[d] direct inquiry into the merits of claimed antecedent constitutional violations." Id. at 266. So Tollett lends little support to the theory that a guilty plea renders the entire case moot.

Nor did Menna add much to the equation. In concluding that the defendant could raise his double jeopardy claim, the Court said,

> The point of [Tollett and Brady] is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

Menna, 423 U.S. 62 n.2. Although the Court said a guilty plea "removes the issue of factual guilt," it did not say the plea rendered the case moot or deprived appellate courts of jurisdiction. If anything, Menna's exception for claims involving the right not to be haled into court indicates that appellate courts *have* jurisdiction to determine whether or not a guilty plea bars a claim. That is, appellate courts have power at least to determine whether the defendant's claim fits Menna's exception. Id.

Nor does the effect of a guilty plea fit into our usual understanding of mootness.

- 28 -

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (quoting County of L.A. v. Davis, 440 U.S. 625, 631 (1979)). A case becomes moot "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (internal quotation marks omitted). We have held that a case is not moot when "we have the power to grant a legally cognizable remedy requested by a party." United States v. Hahn, 359 F.3d 1315, 1323 (10th Cir. 2004) (en banc) (per curiam). When a Defendant enters an unconditional guilty plea and then appeals, a controversy exists as to whether his appeal is barred by his guilty plea. When, as usually happens, the Government raises the effect of the plea, we do not dismiss the case as moot. Instead, we determine whether or not the guilty plea bars the claim or claims asserted on appeal. See, e.g., Fox, 573 F.3d at 1052 n.1; United States v. Porter, 405 F.3d 1136, 1140–41 (10th Cir. 2005); United States v. Wright, 43 F.3d 491, 494–95 (10th Cir. 1994). The jurisdictional effect of the plea cannot be any different when the Government waives the argument.

That an unconditional plea *always* bars the appeal of particular issues, such as the denial of a suppression motion, does not mean the plea moots all appeals brought on those grounds. Mootness deals with whether the court has power to grant relief, not with whether it should exercise its power. Hahn, 359 F.3d at 1323 n.8. See also Lamar, 240 U.S. at 64 ("Jurisdiction is a matter of power, and covers wrong as well as right decisions."). To say that a guilty plea "forecloses independent inquiry" into certain pre-

- 29 -

plea defenses, Tollett, 411 U.S. at 266, is not to say the court has no power to decide the case. Rather, it means the defendant may only appeal on limited grounds, such as vindictive prosecution, double jeopardy, or the voluntary and intelligent nature of his plea. Blackledge, 417 U.S. at 30–31; Menna, 423 U.S. at 62; Brady, 397 U.S. at 748. Other claims not falling within these narrow exceptions are "foreclose[d]," Tollet, 411 U.S. at 266, "bar[red]," Menna, 423 U.S. at 62 n.2, or "relinquished," Broce, 488 U.S. at 571, and "may not be collaterally attacked." Mabry, 467 U.S. at 508. Determining whether a claim is in fact barred, however, is squarely within an appellate court's jurisdiction. See Jacobo Castillo, 496 F.3d at 956 n.7, 957.

We therefore join the Ninth Circuit in holding that Brady and its progeny "address the *preclusive effect* to be given the plea . . . , not the *jurisdiction* of the court."[11] Jacobo Castillo, 496 F.3d at 956. Because an unconditional guilty plea does not deprive us of jurisdiction, the Government may waive or forfeit the effect of such a plea. The Government did so here, and therefore Defendant's guilty plea does not prevent us from reaching the issues he raises on appeal.

III.

Having at long last assured ourselves of our own jurisdiction, we may proceed to the merits. But Defendant's appeal hits one final snag when we consider the appropriate

---

[11] The Ninth Circuit said these cases addressed the "preclusive effect to be given the plea agreement," a statement which is not entirely correct. As Judge Callahan pointed out in her dissent, "the holding in Tollett had nothing to do with the plea agreement" and Menna gave "no indication that a plea agreement even existed." Jacobo Castillo, 496 F.3d at 961 (Callahan, J., dissenting). Rather, these cases addressed the preclusive effect of the plea itself. We therefore join the Ninth Circuit's holding with a slight modification to its wording.

standard of review. The Rules of Criminal Procedure allow a criminal defendant to raise "at any time while the case is pending . . . a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). But we nevertheless review such a claim "only for plain error." United States v. Sinks, 473 F.3d 1315, 1320–21 (10th Cir. 2007). This comports with our established precedent that "a party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error."[12] United States v. Teague, 443 F.3d 1310, 1314 (10th Cir. 2006); Fed. R. Crim. P. 52(b) (allowing an appellate court to correct a "plain error that affects substantial rights . . . even though it was not brought to the court's attention.").

Defendant, despite recognizing plain error review is usually appropriate in such cases, argues we should review the alleged charging defect de novo because it goes to our jurisdiction. Defendant relies on our decision in United States v. Washington, 653 F.3d 1251, 1258 (10th Cir. 2011), where we noted that Sinks addressed only an "*omission* in the indictment," rather than an allegation the indictment charged conduct "outside the sweep of the charging statute." (quoting Peter, 310 F.3d at 714). The defendant in Washington argued we should review his forfeited claim de novo because it went to our subject-matter jurisdiction. Id. We held that "[e]ven assuming, *arguendo*," that de novo review was appropriate, the defendant's claim failed. Id. We noted that "[o]ur assumption is a generous one" because of the Supreme Court's decision in Cotton, id. at

---

[12] When a party *waives* a claim, by contrast, we will not even consider it on appeal. Teague, 443 F.3d at 1314. The Supreme Court has frequently noted the distinction between waiver and forfeiture: "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." Wood v. Milyard, 132 S. Ct. 1826, 1832 n.4 (2012).

1258 n.8, but we did not "definitively determine whether [the defendant's] indictment challenge is jurisdictional." Id. Today, we have addressed that question head-on. As discussed above, a claim that an indictment or information fails to charge an offense is not jurisdictional. Accordingly, when a defendant raises such a claim for the first time on appeal, we review only for plain error. Sinks, 473 F.3d at 21; Cotton, 535 U.S. at 631 ("Freed from the view that indictment omissions deprive a court of jurisdiction, we proceed to apply the plain-error test of Federal Rule of Criminal Procedure 52(b) to respondents' forfeited claim."). Plain error review also applies to Defendant's forfeited constitutional claim. United States v. Svacina, 137 F.3d 1179, 1186 (10th Cir. 1998).

Nevertheless, the Government argues Defendant has "waived, not merely forfeited," appellate review by failing to "assert that the alleged errors of which he now complains constitute plain error." Id. at 28 (citing United States v. LaHue, 261 F.3d 993, 1009 (10th Cir. 2001)). Whether or not his failure to argue for plain error "waives" his claims on appeal, Defendant has at least failed to meet his burden of showing plain error. Federal Rule of Criminal Procedure 52(b) allows us to consider a "plain error that affects substantial rights" even though it was "not brought to the [district] court's attention." But the criminal defendant "has the burden to satisfy the plain-error rule." United States v. Vonn, 535 U.S. 55, 59 (2002). So we will not correct an error unless Defendant shows (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Johnson v. United States, 520 U.S. 461, 467 (1997).

Here, although Defendant has thoroughly briefed his merits arguments—

attempting to show "error"—he has said nothing about how the alleged errors meet the other requirements for plain error. We may consider, for example, the second prong. An error is only plain if it is contrary to "well-settled law." United States v. Edgar, 348 F.3d 867, 871 (10th Cir. 2003). "When no authority from the Supreme Court or this circuit would compel a determination that there was error and there is contrary authority in other circuits, the error can rarely be plain." United States v. Baum, 555 F.3d 1129, 1136 (10th Cir. 2009). The five other circuits to consider Defendant's statutory argument have resoundingly rejected it. See United States v. Williams, 641 F.3d 758, 768–69 (6th Cir. 2011); United States v. Evans, 478 F.3d 1332, 1338–39 (11th Cir. 2007); United States v. Davila, 461 F.3d 298, 303–04 (2d Cir. 2006); United States v. Zavrel, 384 F.3d 130, 137 (3d Cir. 2004); United States v. Reynolds, 381 F.3d 404, 405 (5th Cir. 2004). And his First Amendment argument relies on a novel interpretation of what constitutes a "true threat" under Watts v. United States, 394 U.S. 705 (1969) (per curiam) and Virginia v. Black, 538 U.S. 343 (2003), an interpretation unsupported by any published authority. Because Defendant has not even tried to show how the alleged errors were "plain," we need not engage a full discussion of the merits. See United States v. Lamirand, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) (refusing to "definitively opine on the merits" where a defendant "has not asked us to review his late-blooming argument for plain error"); Richison v. Ernest Group, Inc., 634 F.3d 1123, 1131 (10th Cir. 2011) (holding that, in a civil case, "failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court").

AFFIRMED.